382 So.2d 1298 (1980)
Barry Scott ADLER, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 79-134, 79-833.
District Court of Appeal of Florida, Third District.
April 22, 1980.
*1299 Jack R. Blumenfeld, Moran & Gold and William M. Moran, Miami, for appellant.
Jim Smith, Atty. Gen. and James H. Greason, Asst. Atty. Gen., for appellee.
Before HUBBART and NESBITT, JJ., and PEARSON, TILLMAN (Ret.), Associate Judge.
NESBITT, Judge.
In these consolidated appeals, the defendant seeks reversal of the trial court's denial of his motions to: (1) withdraw his plea of guilty prior to imposition of sentence;[1] (2) vacate his guilty plea after adjudication and sentence,[2] and (3) disqualify the trial judge.[3] We affirm the trial court's rulings for the reasons presented.
A recitation of the chronology of the salient events is necessary to understand the defendant's position in the trial court. He was indicted on September 12, 1977 for: (1) murder in the first degree; (2) robbery; and (3) kidnapping, all committed against Robert Topping. Also indicted, as a co-defendant, was Andrew Schell. As the case progressed for trial, it became the subject of plea negotiations. Defendant's counsel sought and obtained a written confirmation of the agreement reached with the state regarding the plea negotiations.[4] On October 25, 1978, pursuant to the agreement, the defendant plead guilty to the above counts as modified. The court accepted the guilty plea and ordered a presentence investigation. The defendant was allowed to remain at large on bail pending sentencing. On November 13, 1978, the state confirmed by letter to defendant's counsel its understanding with respect to the sentencing of the defendant.[5] The sentencing phase was *1300 scheduled for January 8, 1979. On December 19, 1978, the defendant filed his motion to withdraw the plea of guilty prior to imposition of sentence.[6] An evidentiary hearing on the motion was conducted prior to sentencing following which the trial court denied the motion. After allowing the defendant his allocution rights, the court adjudicated and sentenced him for murder in the second degree and kidnapping and imposed consecutive ninety-nine year terms of imprisonment. No adjudication or sentence was imposed as to the robbery count. New counsel was substituted and filed the motion to withdraw the plea of guilty after adjudication.[7] A hearing thereon was scheduled before the original trial judge for April 6, 1979. On March 29, 1979, the motion to disqualify the trial judge[8] was filed. On the appointed date, the motions were summarily denied with the order denying the motion to vacate citing: "that no evidentiary hearing is appropriate or required."
Since the motion to disqualify the trial judge was not made within ten days prior to the hearing as required by Florida Rule of Criminal Procedure 3.230(c), and no good cause was shown for the failure to have timely filed the motion, it was properly denied. Skipper v. State, 114 Fla. 312, 153 So. 853, appeal dismissed 293 U.S. 517, 55 S.Ct. 76, 79 L.Ed. 631 (1934).
The arguments advanced here for a reversal of the motion to withdraw the guilty plea prior to imposition of sentence and the motion to withdraw the plea of guilty after adjudication and imposition of sentence are substantially alike and inter-related. In summary, the defendant contends: (1) his guilty plea was not freely and voluntarily entered because he intended to enter a plea of nolo contendere; (2) the trial court erred in accepting the guilty plea without making the inquiry required by Florida Rule of Criminal Procedure 3.172; (3) the state attorney failed to honor its agreement to make no recommendation regarding the length of defendant's sentence; and (4) good cause was shown for withdrawal of the guilty plea prior to imposition of sentence.
In resolving these matters, we are fully aware that a plea of guilty must be voluntarily and intelligently entered. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The record must affirmatively demonstrate the defendant understood the nature of the plea and the charges and that he was admitting guilt. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). A guilty plea must not be influenced by ignorance, mistake or unfilled inducements by the prosecution. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The law favors a trial on the merits. Roberts v. State, 142 So.2d 152 (Fla. 3d DCA 1962). The withdrawal of a guilty plea will not be refused where it is the least evident that the ends of justice will be subserved by allowing a plea of not guilty to be entered in its place. Hill v. State, 110 So.2d 464 (Fla. 2d DCA 1959). A motion to withdraw a plea of guilty prior to imposition of sentence should be liberally construed in favor of the defendant. United States v. Klein, 560 F.2d 1236 (5th Cir.1977), cert. denied 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978).
Withdrawal of a guilty plea is not a matter of right but of discretion and will not be set aside absent a showing of abuse. Meaton v. United States, 328 F.2d 379 (5th Cir.1964), cert. denied 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965). The defendant must establish good cause for withdrawal of a guilty plea prior to imposition of sentence, Fla.R.Crim.P. 3.170(f); State v. Braverman, 348 So.2d 1183 (Fla. 3d DCA 1977), cert. denied 358 So.2d 128 (Fla. 1978), and, after *1301 imposition of sentence, establish manifest injustice, Williams v. State, 316 So.2d 267 (Fla. 1975).
Most of the defendant's contentions are dispelled by the plea colloquy which discloses the following:
MR. KESSLER: State your name.
THE DEFENDANT: Barry Scott Adler.
MR. KESSLER: Are you the Barry Scott Adler indicted by this court in the State of Florida versus Barry Scott Adler, 77-27914?
THE DEFENDANT: Yes. I am.
MR. KESSLER: At this time, most respectfully, Mr. Adler is going to withdraw his previously entered plea of not guilty to Counts I, II and III of the Indictment.
The State is going to reduce Count I from first degree to second degree.
MR. STELZER: The State will nolle pros Count IV of the Indictment.
MR. KESSLER: There are other areas. However, for the purpose of the change of plea, I would rather not state them to the Court at this time. They do not affect the taking of the plea in any respect.
THE COURT: Is this an open plea to the Court?
MR. KESSLER: Yes.
We have a letter which indicates the principal areas of our plea agreement. There are other matters that are not indicated in the agreement. However, they do not affect the plea.
Mr. Adler will enter a plea of no contest to the reduced charge in Count I; as charged, Count II, as charged, Count III.
MR. STELZER: It is a plea of guilty, as I understood the agreement.
MR. KESSLER: We have no problem with that, Your Honor.
THE COURT: What are the facts of the case?[9]
.....
THE COURT: Mr. Adler, you say you are nineteen years old?
THE DEFENDANT: Yes.
THE COURT: How far did you go in school?
THE DEFENDANT: I graduated high school.
THE COURT: Are you under the influence of any drug or medication, intoxicant of any kind, which would interfere with your ability to decide what is best for you under these circumstances?
THE DEFENDANT: No.
THE COURT: There is some indication of some mental disability in the past. Are you laboring under such mental disability at this time?
THE DEFENDANT: No.
THE COURT: When was the last time you saw a psychiatrist who may have treated you for any problem you may have had?
THE DEFENDANT: Around four weeks.
THE COURT: Are you taking any psychotropic medication, any psychiatric mediation of any kind?
THE DEFENDANT: No.
THE COURT: Do you feel you are in full command of your faculties and you are able to determine what is best for you under all the circumstances presented to you in this case?
THE DEFENDANT: Yes.
THE COURT: Your attorney, Mr. Kessler, said you want to change your plea as to the first three counts in the Information to plead guilty to second degree murder, robbery and kidnapping.
Do you want to do that?
THE DEFENDANT: Yes.
THE COURT: Do you understand what will happen as a result of the plea? I will order a PSI concerning you. Depending on the results of the PSI  but entirely up to me, it is completely within my discretion  I may sentence you to *1302 anything up to three consecutive life sentences in the state prison.
Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Apart from what you know as to what the sentence may be, have you been promised anything or threatened in any way to get you to plead guilty to these charges?
THE DEFENDANT: No, sir.
THE COURT: Are you pleading guilty solely and only because you are guilty of these charges?
THE DEFENDANT: Yes.
THE COURT: Do you understand that by pleading guilty you are giving up many constitutional rights which are guaranteed to you? You are giving up your right to a trial by jury. You are giving up your right to require the State to prove that you are guilty to the jury beyond a reasonable doubt. You are giving up your right to confront the witnesses at the trial  that is, see them and have your lawyer cross-examine them in your presence. You are giving up your right to subpoena witnesses on your own behalf at the trial.
You are giving up your right to take the stand at the trial in your own behalf, or not take the stand and have the jury instructed that they are not to hold that against you in any way.
Do you understand that by pleading guilty you are giving up all those rights?
THE DEFENDANT: Yes.
THE COURT: Have you had sufficient time to discuss the subject of your plea and its consequences with Mr. Kessler, your attorney?
THE DEFENDANT: Yes, sir.
THE COURT: The Court, finding that the plea has been freely and voluntarily made 
MR. KESSLER: May I have a moment with Mr. Kaye? There may be another question we should dispose of at this time.
.....
THE COURT: Do you feel you are in full possession of your faculties, do you not?
THE DEFENDANT: Yes.
THE COURT: Are you satisfied with the services of Mr. Kessler and Mr. [Oteri] and Mr. Weinberg on your behalf?
THE DEFENDANT: Yes.
THE COURT: Finding that the plea has been freely and voluntarily made, without promise or threat, and upon an adequate factual foundation, I accept the withdrawal of the not guilty plea and entry of the guilty plea to the reduced charge of second degree murder, as charged in Count I, and to the charge of second degree kidnapping and armed robbery in Counts II and III of the Indictment.
What is contemplated as far as the custodial status of this defendant?
.....
MR. STELZER: That is correct. Part of this agreement is that Mr. Adler is now going to start cooperating with the State of Florida, start answering questions which the State of Florida has deposed Mr. Adler that  we wanted to depose Mr. Adler for about fourteen months now.
THE COURT: That is the first the Court has heard of that.
MR. KAYE: As Mr. Kessler said, there are certain aspects of the plea which do not affect the plea, which as far as the defendant's willingness to cooperate with the State is not predicated upon the plea. It is contained in the letter that is the substance of the plea negotiations, which should be made part of the record.
As an addendum to that, that was contemplated by the defense and the State.
MR. KESSLER: As a further example, the defendant is to waive his psychiatric patient privilege between himself and Dr. Michael Gilbert in order that the State may take testimony from Dr. Gilbert, among others.
THE COURT: I will set it for January 8. I will not adjudicate him at this time. He can remain free pending his bond.

*1303 MR. STELZER: Do you find the defendant is competent at this time to enter a plea of guilty?
THE COURT: I have found that the plea is freely and voluntarily made, on an adequate factual foundation, with no promise or threat, or with any mental impediment of any kind.
MR. KESSLER: Thank you.
The court then adjourned but shortly thereafter, on its own initiative, reconvened where the following transpired:
THE COURT: Gentlemen, because of the statements which were made at the conclusion of the hearing, I think we ought to supplement the record somewhat by assuring the Court that part of these negotiations which obviously called for Mr. Adler's cooperation did not involve any return for that cooperation, any statement by the State that it would recommend any particular penalty or anything else.
MR. KAYE: Just to clarify the record, the arrangements that were entered into between the defense and the State were as contained within the body of the letter which is now made part of this record: that Barry Adler would plead guilty to second degree murder, robbery and kidnapping, with the sentence being left entirely up to the Court, based upon the PSI; that as also part of the plea, the defendant would be willing, if the State so chose, to speak to the State and testify about matters the State would ask him about, in any matter whatsoever. That is it.
There is no obligation and no recommendation, one way or the other. The State may still reject any testimony, reject any use that he may be to the State.
The only thing that was offered  in fact, it was not even requested  it was offered by the defense  that if we so choose, the defendant would be willing to talk to us.
MR. KESSLER: That is correct.
THE COURT: Do you understand what we have just said?
THE DEFENDANT: Yes.
THE COURT: You have not been promised anything at all  that the police or the State Attorney or anyone would recommend or make any statement whatsoever to the Court as to what your sentence should be?
THE DEFENDANT: No.
THE COURT: Is that correct?
THE DEFENDANT: That is correct.
MR. STELZER: Mr. Adler's parents were here at the other proceeding but were not here today. Mr. Adler testified as a witness for the defense in this case. I would like to make sure that they were apprised of everything that went on and this was with their advice and consent.
MR. KESSLER: Yes.
Your Honor, basically, the reason we asked it to be set for today, as against tomorrow or the regular calendar today, was that the newspapers, at least, will not pick it up.
Mr. Adler's parents are both apprised of what Mr. Adler is doing, but  they were apprised yesterday that it was going to be today. That is the only difference. There is no problem as far as them knowing exactly what is going on.
THE COURT: Mr. Adler is nineteen years of age?
MR. KESSLER: Yes. He is of age.
MR. KAYE: I have been in contact with the deceased's family and they are aware of the proceedings and the nature and content.
THE COURT: Thank you.
[Thereupon, the hearing was concluded.]
Prior to sentencing on January 8, 1979, the defendant presented his motion to withdraw the plea of guilty. The defendant testified it was his intention to enter a plea of nolo contendere because: (a) he had not committed the crimes charged; (b) he was not guilty of any of the crimes charged; and (c) he desired to cooperate with the state in obtaining the conviction of an indicted co-defendant, Andrew Schell. He denied authorizing his attorneys to enter a guilty plea. The defendant was impeached *1304 by his testimony and responses as made at the plea colloquy. The state did not produce any independent testimony. The court denied the motion to vacate the guilty plea, gave the defendant his allocution rights and pronounced sentence. Defendant's counsel then made the following plea and statement to the court:
THE COURT: Mr. [Oteri], let me ask you what you are attempting. Are you seeking to withdraw the plea?
MR. [OTERI]: Yes, Your Honor.
THE COURT: Reinstate the first degree murder charge?
MR. [OTERI]: Yes, Your Honor, over my judgment. It is what the defendant wants despite all of the conversation we have had with him.
The fact is, Your Honor, that on a purely emotional, almost, level, that this young man  Judge, I have gotten to know fairly well over the last fifteen, sixteen months, is a very high-strung, emotional young man, very much convinced that a great injustice was done to him when Mr. Schell was allowed to plead and when Mr. Schell was not even subjected to an investigation based upon what he had said.
It may not make a lot of sense, legally, Judge. At this point he has not been sentenced and under your rule, if good cause is shown before sentence, a plea should be allowed to be withdrawn if it is in the interest of justice.
I would say to you, Your Honor, based on my experience and I am sure you have even more experience, to force this man to be sentenced today on a plea that was at least the basis of a mistake on the part of communication between us and Barry, and probably a mistake on the part of the communication between the State and us, to force us to sentence him to jail today, Your Honor, is going to do nothing but clog the court with litigation for years, and make a young man very, very bitter about our system.
In this case, the memoranda setting forth the plea and sentencing negotiations[10] were presented to the court and tendered for admission but never formally made a part of the record which would have been the better practice. Our primary concern in reviewing this appeal has been to determine "exactly what was the agreement," Gullo v. State, 280 So.2d 501, 502-03 (Fla. 4th DCA 1973), to which the defendant plead guilty. "[I]f the plea was induced by promises, the essence of those promises must be made known." Davis v. State, 308 So.2d 27, 29 (Fla. 1975); Fla.R.Crim.P. 3.171. The purpose, of course, is to assure the reviewing court that the defendant understood the agreement and that his plea was firmly anchored thereto. Since the appellant has included these memoranda as part of the record on appeal and there is no dispute over the content or that they were the same as those referred to in the plea colloquy, we find the rule has been satisfied.
Although not directly addressed, it is apparent that the defendant's real dissatisfaction is centered upon the indicted co-defendant, Andrew Schell, being allowed to enter a plea of guilty to reduced charges, based upon a plea negotiation, following which his adjudication of guilt and imposition of sentence were withheld and he was placed on concurrent five-year periods of probation. The entire fabric of defendant's argument here is interlaced with references to this event. Following the tender and acceptance of the defendant's guilty plea, the trial judge wisely reconvened court so as to assure and clarify that the defendant's participation or cooperation with the state in the conviction of Andrew Schell had absolutely nothing to do with defendant's guilty plea. In open court, with defense counsel and the defendant present, the assistant state attorney stated: "There is no obligation and no recommendation, one way or the other. The State may reject any testimony, reject any use that he may be to the State." This statement was confirmatory of the dialogue which had taken place earlier. The defendant's counsel stated that the foregoing recitation was a correct *1305 understanding. The court then asked the defendant directly whether any statement made to the police or state attorney regarding Andrew Schell constituted any inducement or promise for the plea to which the defendant replied: "No."
The plea colloquy and memorandum of plea negotiations demonstrate quite clearly the defendant intended and, in fact, did enter a guilty plea primarily because the state reduced the charge from murder in the first degree to murder in the second degree. His contention, therefore, that his plea was not freely and intelligently entered or that he was mistaken as to the entry of a plea of guilty is without merit.
Defendant's argument that there were significant lacunae by the trial judge with respect to the inquiry required by Florida Rule of Criminal Procedure 3.172 is likewise without merit. We have literally compared the plea colloquy against the inquiry required in the cited rule and find there was substantial compliance. There was a lengthy recitation of the factual basis for the guilty plea. The nature and circumstances of the case dictate the basis for ascertaining whether a guilty plea should be entered and the trial court has broad discretion in determining the procedures to be utilized. Williams v. State, supra.
Finally, the defendant argues that the state failed to honor its plea negotiation commitment because it made a recommendation regarding the length of the defendant's sentence. In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), guidelines for voiding dishonored plea negotiations were announced:
[C]ircumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.
404 U.S. 262, 92 S.Ct. 499, 30 L.Ed.2d 433. From the inception, the inducement for the plea of guilty was that the charge of murder in the first degree would be reduced to murder in the second degree and the sentencing left entirely to the trial court. This is explicit from both the memoranda herein referred to[11] and the sentencing phase of the proceeding. The trial judge did not participate in the plea negotiations. In the memorandum regarding the plea negotiations,[12] the state did indicate it would recommend to the probation and parole officer preparing the defendant's presentence investigation that he receive a sentence of "life, or maximum on each count." Assuming that the state initially injected this recommendation after the defendant entered his guilty plea, it did not infringe upon the inducement for the plea. At the plea colloquy, the court made it plain to the defendant:
Depending upon the results of the PSI  but entirely up to me, it is completely within my discretion  I may sentence you to anything up to three consecutive life sentences in the state prison.
Do you understand that?
To which the defendant replied: "Yes." The state made no direct recommendation to the trial court with respect to sentencing. Since the sentencing was left entirely to the trial court's discretion, the fact that the state might have indirectly made a recommendation through the probation and parole officer regarding the length of the defendant's sentence did not vitiate its bargain because the trial court was not bound by any such recommendation and the defendant clearly understood it. State v. Adams, 342 So.2d 818 (Fla. 1977) and Wood v. State, 346 So.2d 143 (Fla. 1st DCA 1977).
Singularly and collectively, it is apparent that no good cause was demonstrated to the trial court sufficient to vacate the guilty plea prior to imposition of sentence. Fla.R. Crim.P. 3.170(f) and State v. Braverman, supra.
No manifest injustice was demonstrated to warrant vacating the guilty plea after *1306 imposition of sentence. Fla.R.Crim.P. 3.850 and Williams v. State, supra.
Affirmed.
HUBBART, Judge (dissenting)
I must respectfully dissent. I would reverse the judgments of conviction and sentences appealed from and remand the cause to the trial court with directions to allow the defendant to withdraw his guilty plea.
In my view, the defendant established good cause for withdrawing his guilty plea prior to sentencing upon his proper motion in this cause under Fla.R.Crim.P. 3.170(f). The guilty plea herein was induced by promises in plea bargaining discussions, the essence of which were not made known to the defendant at the time the trial court accepted the defendant's guilty plea. Under the established law of this state, such a plea is involuntary and cannot be permitted to stand; it certainly is subject to withdrawal prior to sentencing upon proper motion of the defendant. Davis v. State, 308 So.2d 27, 29 (Fla. 1975); Costello v. State, 260 So.2d 198 (Fla. 1972); Canada v. State, 144 Fla. 633, 198 So. 220 (1940).
It is clear from the record of the guilty plea proceedings herein that plea discussions had taken place in the cause, that certain promises had been made to the defendant, but, the essence of those promises, contrary to Davis v. State, 308 So.2d 27, 29 (Fla. 1975), were not revealed on the record to the defendant. The record of the plea hearing discloses in part the following:
"[DEFENSE COUNSEL]: State your name.
THE DEFENDANT: Barry Scott Adler.
[DEFENSE COUNSEL]: Are you the Barry Scott Adler indicted by this court in the State of Florida versus Barry Scott Adler, 77-27914?
THE DEFENDANT: Yes, I am.
[DEFENSE COUNSEL]: At this time, most respectfully, Mr. Adler is going to withdraw his previously entered plea of not guilty to Counts I, II, and III of the Indictment.
The State is going to reduce Count I from first degree to second degree.
[PROSECUTOR]: The State will nolle pros Count IV of the Indictment.
[DEFENSE COUNSEL]: There are other areas. However, for the purpose of the change of plea, I would rather not state them to the Court at this time. They do not affect the taking of the plea in any respect.

THE COURT: Is this an open plea to the Court?

[DEFENSE COUNSEL]: Yes.

We have a letter which indicates the principal areas of our plea agreement. There are other matters that are not indicated in the agreement. However, they do not affect the plea.
Mr. Adler will enter a plea of no contest to the reduced charge in Count I; as charged, Count II as charged, Count III.
[PROSECUTOR]: It is a plea of guilty, as I understood the agreement.
[DEFENSE COUNSEL]: We have no problem with that, Your Honor..." [Emphasis added.]
The letter referred to by defense counsel concerning the so-called "principal areas of our plea agreement" was never made a part of the guilty plea proceeding nor were the contents thereof revealed on the record to the defendant. Moreover, no letter of any kind, as the majority herein concedes, was ever made a part of the record of the guilty plea proceeding. In addition, confusing statements are made to the court by defense counsel revealing the existence of other parts of the plea agreement [not contained in the plea agreement letter] which allegedly did not affect the plea, but which defense counsel did not want to state to the court. No inquiry was made by the trial court as to what defense counsel was talking about.
During the subsequent guilty plea colloquy between the court and the defendant, the record reveals the following:
"THE COURT: Apart from what you know as to what the sentence may be, have you been promised anything or threatened in any way to get you to plead guilty to these charges?

*1307 THE DEFENDANT: No, sir." [Emphasis added.]
This exchange appears to indicate that some type of promise had been made to the defendant as to sentencing, but that promise, whatever it was, is not spread out on the record nor revealed to the defendant in any way. Moreover, after the plea had been accepted, the trial court reconvened after a short recess and additional statements were made on the record by various parties which adds further confusion as to precisely what had been agreed to concerning the plea agreement herein. Finally, the letters referred to by the majority at footnotes 4 and 5 of its opinion can form no basis for our decision herein as they were never introduced as a part of the guilty plea record nor do they represent a meeting of minds as to precisely what this plea agreement was.
All considered, I think good cause was shown by the defendant for withdrawing his guilty plea prior to sentencing. The plea was clearly the product of plea discussion promises, the essence of which were not disclosed on the record during the guilty plea proceeding; confusion abounds as to what those promises were. Our law has long favored the withdrawal of a guilty plea prior to sentencing and a trial on the merits where it is the least evident that the ends of justice would be served thereby. Canada v. State, 144 Fla. 633, 198 So. 220 (1940). Surely, that minimal showing has been made in this case. By finding no error in the trial court's denial of the defendant's motion to withdraw his guilty plea prior to sentencing based on this record, we depart, in my view, from the established law of this state.
I would reverse and remand as indicated above.
NOTES
[1] Pursuant to Fla.R.Crim.P. 3.170(f).
[2] Pursuant to Fla.R.Crim.P. 3.850.
[3] Pursuant to Fla.R.crim.P. 3.230.
[4] The substance of this letter regarding plea negotiations is as follows:

This letter will serve to confirm our recent telephone conversation and several other conversations prior thereto, wherein we discussed the possibility of the above-named defendant entering a negotiated plea in this case.
Our understanding is that the terms and conditions of said plea would be as follows:
1. The State of Florida would reduce the charge of First Degree Murder as contained in Count I of the Indictment to a charge of Second Degree Murder.
2. The State of Florida would abandon the charge of Possession of a Weapon while Engaged in a Criminal Offense, as contained in Count IV of the Indictment.
3. The defendant would tender to the court a plea of Guilty to Count I as reduced to Second Degree Murder, Count II which charges the offense of Robbery, and Count III which charges the offense of Kidnapping.
4. The sentence to be imposed would be left entirely up to the discretion of Judge Alan Schwartz.
The State of Florida hereby states that it is prepared to abide by the above-stated plea agreement if the defendant herein fulfills his part of the agreement.
Since the October 2, 1978 trial date is rapidly approaching, we would appreciate hearing from you as soon as possible on this matter. Thank you for your cooperation.
[5] The substance of the letter regarding sentencing is as follows:

Pursuant to your request for written expression of the state's position regarding sentencing in the above-styled case, let me say that the State of Florida will recommend, in the Pre-sentence Investigation report, that the defendant be given a sentence of life, or maximum on each count.
The State will also say in the PSI, that there is a written agreement between the State and the Defense, dated September 14, 1978 (a copy of which is in the Court file), in which the State agrees to leave the sentencing entirely up to the Court. The State, pursuant to that agreement, will not enter an objection if the Court, in exercising its sentencing discretion, chooses to sentence the defendant to concurrent rather than consecutive terms. I believe this phraseology is consistent with the matters we discussed in my office prior to the entry of the plea.
[6] Fla.R.Crim.P. 3.170(f).
[7] Fla.R.crim.P. 3.850.
[8] Fla.R.Crim.P. 3.230.
[9] At this point, an assistant state attorney recited the salient evidentiary facts he expected to present to a jury in the event of trial.
[10] See footnotes 4 and 5, supra.
[11] See footnotes 4 and 5, supra.
[12] See footnote 5, supra.