564 So.2d 1060 (1990)
George PORTER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 72301.
Supreme Court of Florida.
June 14, 1990.
Rehearing Denied September 4, 1990.
*1061 James B. Gibson, Public Defender, and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
George Porter, Jr., appeals his sentence of death and related criminal convictions.[1] We affirm.
Porter elected to represent himself, with the assistance of standby counsel, when he went on trial in November 1987 on two counts of first-degree murder and one count each of armed burglary and aggravated assault. The facts adduced at trial are as follows.
In 1985 in Melbourne, Florida, Porter became the live-in lover of the first victim, Evelyn Williams ("Williams"). Their relationship was stormy almost from the beginning, aggravated by hostility between Porter and Williams' children, especially Williams' daughter, Amber. Several violent incidents occurred during the course of Porter's relationship with Williams. In July 1986, Porter damaged Williams' car while she was at work, and later he telephoned and threatened to kill Williams and Amber. Porter left town shortly thereafter and was not seen again in town until early October 1986. Before Porter returned to Melbourne, Williams had entered a relationship with the second victim, Walter Burrows.
When Porter returned to town, he contacted Williams' mother, Lora Mae Meyer. He told her that he wanted to see Williams, and that he had a gift for her. Meyer told Porter that her daughter did not wish to see him anymore, and that Williams wanted nothing from him. Nevertheless, Porter persisted. During each of the two days immediately preceding the murder, Porter was seen driving past Williams' house.
A few days before the murder, Porter had a conversation with a friend, Nancy Sherwood, who testified that Porter told her, "you'll read it in the paper." She offered no explanation for Porter's remark. Porter went to the home of another friend, Dennis Gardner, and asked to borrow a gun. Gardner declined, but the gun subsequently vanished from Gardner's home.
On October 8, 1986, Porter visited Williams, who then called the police because she was afraid of him. That evening, Porter went to two cocktail lounges. He spent the night with a friend, Lawrence Jury, who said that Porter was quite drunk by 11 p.m.
*1062 At 5:30 a.m. the next morning, Amber awoke to the sound of gunshots. She ran down the hallway and saw Porter standing over her mother's body. Amber testified that Porter came toward her, pointed a gun at her head and said, "boom, boom, you're going to die." Burrows then came into the room, struggled with Porter, and forced him outside. Amber telephoned for emergency assistance.
Williams' son, John, who lived next door, testified that he heard gunshot blasts at about 5:30 a.m. He ran outside and saw Burrows lying facedown in the front lawn. Both Williams and Burrows were dead by the time police arrived at the scene.
On December 5, 1987, as the prosecution was nearly finished presenting its case-in-chief, Porter told the judge that he wanted to plead guilty to the murder charges and no contest to the other charges. When the judge sought the factual basis of the pleas from Porter, Porter denied killing Williams, although said he may have killed Burrows. The judge refused to accept the pleas on that basis. Porter consulted with his standby counsel and then said he would plead guilty to all four charges, but that he did not want to provide a factual basis for the pleas. The trial court conducted an extensive inquiry into the voluntariness of the pleas, and the prosecutor presented the factual basis in support of guilt. Porter admitted his guilt and said he changed his pleas "[b]ecause I want to get it over with." The trial court accepted the guilty pleas to all four counts.
That night, when Porter returned to his jail cell, he attempted to commit suicide by twice hurling himself to the concrete floor from a fourteen-foot catwalk. Porter broke his leg but suffered no other serious injuries. The physicians who examined Porter concluded there was no reason to believe that Porter was mentally incompetent.
On January 4, 1988, Porter filed a motion to withdraw his pleas of guilty. In a hearing on the motion, Porter testified that the night before he pleaded guilty, he learned through an inmate and a guard that two other guards had said that something bad would happen to Porter's eleven-year-old son if Porter continued to stand trial. Porter contended that this motivated his suicide attempt. However, Porter refused to reveal the names of those who informed him of the threat. The trial court denied Porter's motion to withdraw his pleas.
On January 21, 1988, the trial jury returned to hear evidence in the penalty phase, during which Porter was represented by counsel. The jury recommended death on both murder counts. The trial court imposed a death sentence for the murder of Williams, but imposed a sentence of life imprisonment for the murder of Burrows, finding that the aggravating factors in the latter instance were merely "technical."[2] The trial court also sentenced Porter to life for armed burglary and five years for aggravated assault.
Porter raises six issues on appeal.[3]
*1063 First, he argues that the trial court improperly accepted his guilty pleas and then improperly denied his motion to withdraw those pleas. The record fails to support such an assertion. "[A] plea of guilty must be voluntarily made by one competent to know the consequences of that plea and must not be induced by promises, threats or coercion." Mikenas v. State, 460 So.2d 359, 361 (Fla. 1984); see also Lopez v. State, 536 So.2d 226, 228 (Fla. 1988). To assure that the defendant entered the plea voluntarily, the trial court must make a detailed inquiry on the record. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Lopez; Mikenas. The colloquy in this record reflects that the trial court made a conscientious and detailed inquiry. Indeed, the trial judge took great pains to assure that Porter's guilty pleas were the result of his own free will.
Likewise, we find no error in the trial judge's denial of Porter's motion to withdraw his pleas. In Lopez, the Court said:
Allowing the withdrawal of a guilty plea is within a trial court's discretion; it is not a matter of right. Adams v. State, 83 So.2d 273 (Fla. 1955); Adler v. State, 382 So.2d 1298 (Fla. 3d DCA 1980). The burden of proving a trial court abused its discretion in refusing to allow withdrawal of a guilty plea is on the defendant. Mikenas; Adams. After imposition of sentence, that burden means that a defendant must show manifest injustice. Adler.

Lopez, 536 So.2d at 229. Although Porter asserts that he was coerced, he refused to give the names of the officers who allegedly made the threat, and he provided no other evidence to prove his claim. Under these circumstances, we do not find that the trial court erred in rejecting his claim as unfounded.
Having found sufficient competent evidence in the record to support the verdicts in the guilt phase, we affirm each of the convictions.
Porter next argues that Williams' murder was not especially heinous, atrocious, or cruel. In the seminal case of State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1959, 40 L.Ed.2d 295 (1974), the Court addressed the meaning of "especially heinous, atrocious or cruel":
It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim.

Id. at 9 (emphasis added).
We agree that the murder of Williams did not stand apart from the norm of capital felonies, nor did it evince extraordinary cruelty. We see little distinction between this case and Amoros v. State, 531 So.2d 1256, 1261 (Fla. 1988), wherein the Court struck the trial court's finding of especially heinous, atrocious, or cruel on a finding that the murderer fired three shots into the victim at close range. Moreover, this record is consistent with the hypothesis that Porter's was a crime of passion, not a crime that was meant to be deliberately and extraordinarily painful. The state has not met its burden of proving this factor beyond a reasonable doubt, and the trial court erred in finding to the contrary.
However, the state did meet its burden in proving beyond a reasonable doubt that the murder was committed in a cold, calculated, and premeditated manner without any moral or legal justification. § 921.141(5)(i), Fla. Stat. (1985). To avoid arbitrary and capricious punishment, this aggravating circumstance "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found *1064 guilty of murder." Zant v. Stephens, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983) (footnote omitted). Since premeditation already is an element of capital murder in Florida,[4] section 921.141(5)(i) must have a different meaning; otherwise, it would apply to every premeditated murder. Therefore, section 921.141(5)(i) must apply to murders more coldblooded, more ruthless, and more plotting than the ordinarily reprehensible crime of premeditated first-degree murder.[5]
The Court has adopted the phrase "heightened premeditation" to distinguish this aggravating circumstance from the premeditation element of first-degree murder. See, e.g., Hamblen v. State, 527 So.2d 800, 805 (Fla. 1988); Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Heightened premeditation can be demonstrated by the manner of the killing, but the evidence must prove beyond a reasonable doubt that the defendant planned or arranged to commit murder before the crime began. Hamblen, 527 So.2d at 805; Rogers, 511 So.2d at 533. See, e.g., Koon v. State, 513 So.2d 1253 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1124, 99 L.Ed.2d 284 (1988). Hamblen and Rogers show that heightened premeditation does not apply when a perpetrator intends to commit an armed robbery of a store but ends up killing the store clerk in the process. Nor does it apply when a killing occurs during a fit of rage because "rage is inconsistent with the premeditated intent to kill someone," unless there is other evidence to prove heightened premeditation beyond a reasonable doubt. Mitchell v. State, 527 So.2d 179, 182 (Fla.), cert. denied, 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988).
This is not a case involving a sudden fit of rage. Porter previously had threatened to kill Williams and her daughter. He watched Williams' house for two days just before the murders. Apparently he stole a gun from a friend just to kill Williams. Then he told another friend that she would be reading about him in the newspaper. While Porter's motivation may have been grounded in passion, it is clear that he contemplated this murder well in advance.
Finally, Porter argues that the death penalty is not proportional in this instance. We disagree. Because death is a unique punishment, e.g., Fitzpatrick v. State, 527 So.2d 809, 811 (Fla. 1988), it is necessary in each case to engage in a thoughtful, deliberate proportionality review to consider the totality of circumstances in a case, and to compare it with other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances. See, e.g., Hallman v. State, 560 So.2d 223 (Fla. 1990) (reversing a jury override despite a finding of four valid aggravating circumstances weighed against only nonstatutory mitigating circumstances). The circumstances of this case depict a cold-blooded, premeditated double murder. The imposition of the death penalty is not disproportionate to *1065 other cases decided by this Court. See, e.g., Turner v. State, 530 So.2d 45 (Fla. 1987) (on rehearing), cert. denied, ___ U.S. ___, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989).
For the foregoing reasons, we affirm each of the convictions and the sentence of death.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW and GRIMES, JJ., concur.
McDONALD, J., concurs in result only.
BARKETT, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, concurring in part and dissenting in part.
I agree that Porter's convictions should be affirmed. I believe, however, that a proportionality review mandates reversal of the penalty. I am not persuaded that the aggravating factor of cold, calculated, and premeditated has been established beyond every reasonable doubt. I do not suggest that there is an "unrequited love" exception to the death penalty. Nonetheless, this Court consistently has accepted as substantial mitigation the inflamed passions and intense emotions of such situations. In almost every other case where a death sentence arose from a lovers' quarrel or domestic dispute, this Court has found cause to reverse the death sentence, regardless of the number of aggravating circumstances found, the brutality involved, the level of premeditation, or the jury recommendation. See Blakely v. State, 561 So.2d 560 (Fla. 1990) (death penalty disproportional despite finding of heinous, atrocious, or cruel, and cold, calculated, and premeditated); Amoros v. State, 531 So.2d 1256, 1261 (Fla. 1988); Garron v. State, 528 So.2d 353, 361 (Fla. 1988); Fead v. State, 512 So.2d 176, 179 (Fla. 1987), receded from on other grounds, Pentecost v. State, 545 So.2d 861, 863 n. 3 (Fla. 1989); Irizarry v. State, 496 So.2d 822, 825-26 (Fla. 1986); Wilson v. State, 493 So.2d 1019, 1023 (Fla. 1986); Ross v. State, 474 So.2d 1170, 1174 (Fla. 1985); Herzog v. State, 439 So.2d 1372, 1381 (Fla. 1983); Blair v. State, 406 So.2d 1103, 1109 (Fla. 1981); Phippen v. State, 389 So.2d 991 (Fla. 1980); Kampff v. State, 371 So.2d 1007 (Fla. 1979); Chambers v. State, 339 So.2d 204 (Fla. 1976); Halliwell v. State, 323 So.2d 557 (Fla. 1975); Tedder v. State, 322 So.2d 908 (Fla. 1975); cf. Hamilton v. State, 547 So.2d 630 (Fla. 1989) (aggravating circumstances and judgment of guilt reversed, remanded for new trial). The Court has even reversed death sentences where, as in Porter's case, the defendant murdered two people during the same violent outburst. See Garron; Wilson; Phippen; cf. Hamilton. Generally when we have affirmed death sentences in analogous situations, we have noted that the defendants had prior, unrelated convictions of violent felonies. See Hudson v. State, 538 So.2d 829 (Fla.) (defendant was on community control for sexual battery when he committed the murder), cert. denied, ___ U.S. ___, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989); Lemon v. State, 456 So.2d 885 (Fla. 1984) (defendant committed murder shortly after serving prison sentence for assault with intent to commit first-degree murder), cert. denied, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); Williams v. State, 437 So.2d 133 (Fla. 1983) (defendant had been convicted of aggravated assault, and was on parole for possession of firearm by a convicted felon, when he committed the murder), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984); King v. State, 436 So.2d 50 (Fla. 1983) (defendant had a prior conviction of manslaughter for killing a woman with an axe), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 163 (1984). There is no finding that Porter had any prior, unrelated violent felony convictions before this case arose.
Furthermore, the record discloses that Porter had been drinking heavily, to the point of drunkenness, in the late night hours prior to the murder. Shortly after the murder he purchased more liquor and beer. This evidence, combined with evidence of Porter's emotionally charged, desperate, frustrated desire to meet with his former lover, is sufficient to render the *1066 death penalty disproportional punishment in this instance, although it certainly does not excuse the killing.
KOGAN, J., concurs.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] As to both counts of murder, the trial court found aggravating circumstances that: (1) the defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to that person (these two murders and the accompanying aggravated assault), § 921.141(5)(b), Fla. Stat. (1985); and (2) the capital felonies were committed while the defendant was engaged in the commission of a burglary, id. § 921.141(5)(d).

The trial court found two additional aggravating circumstances as to the murder of Williams: (1) the murder was especially heinous, atrocious, or cruel, id. § 921.141(5)(h); and (2) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, id. § 921.141(5)(i).
The trial court found no mitigating circumstances.
[3] Porter includes a claim that the trial court's instructions violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). This issue already has been decided adversely to Porter. Combs v. State, 525 So.2d 853 (Fla. 1988); Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). His argument that the Florida death penalty statute is unconstitutional also is without merit. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
[4] Premeditation as an element of first-degree murder, § 782.04(1)(a)(1), Fla. Stat. (1985),

is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues. Weaver v. State, 220 So.2d 53 (Fla. 2d DCA), cert. denied, 225 So.2d 913 (1969). Premeditation does not have to be contemplated for any particular period of time before the act, and may occur at a moment before the act. Hernandez v. State, 273 So.2d 130 (Fla. 1st DCA)[,] cert. denied, 277 So.2d 287 (1973). Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of the victim is concerned. Larry v. State, 104 So.2d 352 (Fla. 1958).
Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982); Provenzano v. State, 497 So.2d 1177 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987).
[5] See generally Kennedy, Florida's "Cold, Calculated and Premeditated" Aggravating Circumstance in Death Penalty Cases, 17 Stetson L.Rev. 47 (1987).