260 So.2d 198 (1972)
Michael Vincent COSTELLO, Appellant,
v.
STATE of Florida, Appellee.
No. 39995.
Supreme Court of Florida.
March 1, 1972.
Rehearing Denied April 27, 1972.
*199 Tobias Simon, Miami, for appellant.
Robert L. Shevin, Attorney General, and Ronald W. Sabo, Asst. Atty. Gen., for appellee.
ERVIN, Justice.
This is an appeal from a death sentence imposed by a circuit court judge after the defendant, Costello, entered a plea of guilty generally to murder. He was represented by two court-appointed attorneys during the proceedings before the judge, and they initiated this appeal. Costello subsequently filed a motion to dismiss these lawyers; it was granted by this Court. He later requested that he be represented by the counsel above named, which was granted, who presented arguments and briefs in his behalf.
Costello was charged with first degree murder; he voluntarily made two statements in which he admitted the killing. The day of his scheduled jury trial, he appeared in court with counsel and requested permission to change his plea of "not guilty" to one of "guilty generally." Following extensive questioning of the defendant[1] the judge agreed to let him enter the plea. The judge then heard testimony and examined evidence to determine the degree of murder of which Costello was guilty. Two days later the judge adjudicated him guilty of murder in the first degree. Following a pre-sentence investigation, the judge imposed the death sentence.
At a post-conviction hearing, and on appeal here, Costello contended, among other things, that the guilty plea was made only because the night before the trial one of his attorneys told him the judge would not impose the death sentence if he entered *200 such a plea.[2] The attorney filed an affidavit with the trial court at the post-conviction hearing in which he admitted so advising the defendant.[3]
At the hearing, the Judge stated, "I have never said I do not believe in capital punishment. Nor would I expressly say `if the State would not recommend it.'" The State Attorney said that he told the defense lawyer "that I would not recommend mercy if the defendant pled guilty to first degree murder or any other crime, and on the other hand, I would not recommend the death sentence if he pled guilty. In other words, it was my position that my office would stand mute before the court with reference to any recommendation concerning the defendant." The judge denied all motions.
Costello raises seven points on appeal. The one concerning the guilty plea is the only issue which must be discussed in this opinion.
Costello contends the trial judge erred in denying his post-conviction motion for leave to withdraw the guilty plea and motion to allow an immediate trial because he was under a misapprehension at the time he entered the plea. While trial judges have the discretion to deny such motions, appellate courts may order a jury trial if they feel such discretion has been abused. (Artigas v. State, 1939, 140 Fla. 671, 192 So. 795.)
Guilty pleas are permitted under the Florida Rules of Criminal Procedure (Rule 3.170 F.R.C.P., 33 F.S.A.). Courts may not, however, "accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." (Rule 3.170(a) F.R.C.P.) This Court has held that to be voluntary, a plea must be made "by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance." (Pope v. State, 1908, 56 Fla. 81, 47 So. 487, 488.) Voluntariness has traditionally been determined by judicial questioning of the defendant.
The trial judge in this case carefully questioned Costello prior to accepting the guilty plea, and the record shows a sincere attempt on his part to determine whether it was being entered into freely and voluntarily. Costello stated unequivocally that it was. The trial judge was so convinced. Without the attorney's affidavit, we would share that conviction.
*201 The affidavit, however, shows that the night before the plea was made, Costello's court-appointed attorney indicated the judge would not impose the death sentence. The answers Costello gave the next day seem to be perfunctory responses by a boy who knew he would not be electrocuted.
Guilty pleas are voided where judges or prosecutors actually promise defendants they will be given lesser sentences than they in fact receive. (Reddick v. State, Fla.App. 1966, 190 So.2d 340, cert. denied, Fla. 1967, 199 So.2d 99.) We do not believe the result should be different when a defendant has a reasonable basis for relying upon his attorney's mistaken advice that the judge will be lenient. (See particularly, Brown v. State, Fla. 1971, 245 So.2d 41.) The effect upon the defendant is the same; in each case he exchanges his constitutional right to a jury trial for a promise of leniency. We agree with the United States District Court for the Southern District of New York, which said:
"A clearcut statement by defense counsel that the District Attorney has made a promise, or an ambiguous remark to which the defendant gives the same meaning, has much the same psychological effect on the defendant as a promise by the District Attorney. The effect may be greater since the defendant is likely to place more trust in his own attorney than in a member of the prosecutor's staff." (United States ex rel. Thurmond v. Mancusi, 1967, 275 F. Supp. 508, 517.)
And when the attorney has been appointed by the court, the defendant is especially justified in believing his promises of judicial leniency; such a lawyer is unquestionably a vital arm of the court, and a defendant has every right to believe him when he says he is speaking for the judge.
We conclude that under the particular facts in this case the defendant did not freely enter the guilty plea. It was entered because he placed his trust in a court-appointed attorney who apparently led him to believe the trial judge would not impose a death sentence if he pleaded guilty.
We warn other disgruntled defendants, however, that ordinarily we will not void a guilty plea entered into by one who swears it is voluntarily made. Defendants who plead guilty and are given a stiffer sentence than they anticipated cannot automatically expect to receive another try at a lighter sentence. It is not enough for a defendant to argue that he was under an impression that a promise of a lesser penalty had been made by the judge or prosecutor. A reasonable basis for such an impression must be shown. One was shown here by court-appointed counsel's affidavit.
Had the trial judge in this case questioned the defense lawyer, the misunderstanding about the death penalty could have come to light before the plea was accepted. We quote with approval Pleas of Guilty Standard 1.5, The American Bar Association Standards for the Administration of Criminal Justice, and express our hope that the trial judges of this State will consider utilizing it:
"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or threats were used to obtain the plea." (Emphasis supplied.)
*202 And, finally, we remind the defense bar of the tremendous burden placed upon it; defense attorneys must be careful when advising their clients to plead guilty. The problems confronting such lawyers were discussed recently by the Supreme Court of Minnesota, which said:
"In a criminal case, one decision which must ultimately belong to a client, with certain prominent exceptions, is what plea to enter. A.B.A. Project on Standards for Criminal Justice, Standards Relating to the Defense Function (Tentative Draft 1970) § 5.2(a). In making this decision the accused should have the carefully informed advice of his lawyer. The advice rendered to the client in the plea-making decision must reflect a professionally considered assessment of the client's predicament. However, in advising his client under such circumstances, the lawyer must be careful not to misstate or misrepresent the facts in a manner which could unfairly persuade one to enter a plea of guilty. The general rule governing a lawyer's conduct as it relates to the accused's decision with respect to his plea is set forth in A.B.A. Project on Standards for Criminal Justice, Standards Relating to the Defense Function (Tentative Draft 1970) § 5.1(b), as follows:
"`(b) It is unprofessional conduct for a lawyer intentionally to understate or overstate the risks, hazards or prospects of the case to exert undue influence on the accused's decision as to his plea.'" (Olness v. State, 1971, 290 Minn. 198, 186 N.W.2d 706, 709.)
Ordinarily under circumstances such as these, as we have reiterated hereinbefore, a plea of guilty is allowed to be withdrawn and a new trial ordered. However, it is our alternative view that in this particular case because of the nature of Appellant's attack on his death sentence and his admissions in connection therewith the trial court may in lieu of a new trial accept the plea of guilty in the context it was submitted and sentence Appellant to life imprisonment. In other words, a new trial may be ordered or a sentence of life imprisonment may be entered as the trial judge deems appropriate.
We reverse and remand to the trial court for disposition not inconsistent with this opinion.
It is so ordered.
CARLTON, McCAIN and DEKLE, JJ., concur.
ADKINS, J., dissents with opinion.
ROBERTS, C.J., and BOYD, J., dissent and agree with ADKINS, J.
ADKINS, Justice (dissenting):
I respectfully dissent.
When this case was called for trial the attorneys for defendant announced that the defendant wished to withdraw his plea of not guilty and enter a plea of guilty generally to the indictment, as authorized by Florida Rules of Criminal Procedure, Rule 3.170(h), which reads as follows:
"When an indictment, information or affidavit charges an offense that is divided into degrees without specifying the degree, if the defendant pleads guilty generally the court shall, before accepting the plea, examine witnesses to determine the degree of the offense of which the defendant is guilty." (Emphasis supplied)
In the absence of the jury, defendant was examined by his attorneys as well as the trial judge concerning the voluntary nature of his plea. From this examination it appears that defendant, 19 years of age, had been married on March 21, 1968, and divorced on July 1, 1969. His former wife lived in Hollywood. Defendant graduated from high school in Hollywood, Florida, and attended college for one year. He was *203 a cook by occupation, but at one time had been employed as a private detective by the Burns Detective Agency.
There is some evidence of instability, but he had never been declared mentally incompetent. The interrogation then continued:
"Q Well, you understand what you have been charged with, Mr. Costello?
A Yes.
Q First degree murder?
A Right.
Q I think the man's name was McCrary. Do you understand the charge?
A I do.
Q Now, Mr. Costello, a plea of guilty admits guilt of the charge, and a plea of not guilty denies the charge. Do you understand that?
A Yes.
Q I want to advise you that under the law you can be sentenced to two alternatives: One would be death, and the other would be life imprisonment in the Division of Correction in the State of Florida. Do you understand that?
A Yes.
Q A plea of guilty to first degree murder puts the burden on the Court to decide what the punishment might be. The Florida Statutes say a plea of guilty, generally, to the indictment means you are admitting that you are guilty of first degree, or any lesser degree, and the Court will have to determine what degree. Is that what your understanding of it is?
A Yes, sir.
Q Of course the Court will have to hear the evidence, Mr. Costello. It is not the same as a trial, because you admit the death of Captain McCrary, and that you did it. The question is: What degree of unlawful homicide is it? Do you understand that?
A Yes, sir.
Q You are represented by Mr. Jere Tolton, who had been appointed to represent you, and Mr. Hugh Handly, also appointed to represent you. Have you discussed fully with your counsel your case, and explained to them everything you know about it?
A I have, sir, best of my knowledge  all that I can remember.
Q Have your lawyers discussed with you the defenses that might be available to the charge, and given you the benefit of their advice?
A Yes, everything I have asked for.
Q Are you satisfied the attorneys have represented you to the best of their ability, and done all that could be expected of them?
A Yes. One hundred per cent.
Q Mr. Costello, I want you to think about this. Are you entering a plea of guilty to murder in the first degree because you are guilty, and for no other reason?
A Yes, sir.
Q Mr. Costello, has any person, anybody at all, promised or suggested to you that you would be rewarded in any manner, or that you will be given life sentence if you plead guilty to first degree murder?
A. I haven't been promised anything. No, sir.
Q I don't doubt your word for a moment, Mr. Costello, but when you say you have not been promised anything, would you expand on that?

*204 A Well, I asked their legal opinion. They felt that it would be better for me to take my chances, and before a jury might be less, if I went for a trial by jury.

Q I see. It was not in the nature of a promise or anything like that?
A No.

Q You are pleading guilty because you hope that your chances will be better before the Court than before a jury?
A Yes.

Q Has anybody used any threats, force, pressure or any intimidation, or any kind of pressure to cause you to plead guilty?
A No, sir." (Emphasis supplied)
The judge then interrogated court-appointed counsel as to the nature of their investigation and assured himself that the case had been thoroughly investigated by these attorneys. He found that the defendant understood the nature of the charge and the defenses available to him. He further found that defendant's decision to plead guilty was made freely and voluntarily and of defendant's own free will. The plea of guilty, generally, to the indictment was then received.
Defendant was not adjudged guilty at this time. As authorized by Florida Rules of Criminal Procedure, Rule 3.170(h), the State presented its evidence by producing the witnesses. In other words, the Court was required to determine the degree of the offense of which the defendant was guilty.
After taking the matter under advisement, the Court at a subsequent date adjudicated the defendant guilty of murder in the first degree. He mentioned the ferocity of the attack on the decedent as established by the testimony of the patrolman, the condition of the body of the decedent, and the testimony of the examining physician. He reviewed psychiatric reports and ordered a pre-sentence investigation to assist him in determining punishment. The Court at the time of the adjudication made the following statement.
"I dislike to sentence a nineteen year old boy, but I believe he planned it. He took his car and identification papers. The confession also indicates a robbery, and of course the killing of a human being and perpetration, or attempt to perpetrate a robbery in Florida takes premeditation and constitutes murder in the first degree. It doesn't have to be alleged. It only has to be alleged in the indictment that he premeditated murder somewhere. The burden is pretty heavy, I know. I am sworn to uphold the law."
The Court, referring to the attorneys, said:
"I must say to you two gentlemen, I realize the burden on you, too. It's a horrible burden, I am sure, but I know that both Mr. Tolton and Mr. Handley have worked awfully hard on this case. I don't see how anyone could do any better for your client than you did, considering the facts that have been established. I might add, I am kind of proud of both of you. No complaints about so-called pay. I know the Court appointed counsel in this type of case receives remuneration from the County, but it doesn't begin to cover the cost, really. If this were private counsel  I'm talking about two or three thousand dollars each. I think you two have done a good job for Mr. Costello. It's a question of fact, you have done everything at all possible for him.
"Well, I am going to remand you to the custody of the Sheriff, where he will keep you in good care until the Court has to pass sentence. I'll reiterate, I am going to give you ample time. I'm going to give myself sufficient time to prepare for it also.
"I really don't know. So far I have settled only one question, really. I have *205 tried to decide the question of guilt or innocence. That is all. This is going to be doubly tough in this case. It is always tough to sentence a man, anyway, to make a decision. This will be especially tough. I might add, it's the first time it has happened to me. You all know that, too.
"All right. Mr. Costello is remanded to the custody of the Sheriff."
The evidence was heard on April 1, 1970, and defendant was adjudicated guilty on April 3, 1970. On June 16, 1970, the Court imposed the death sentence. At this hearing the Court said:
"Gentlemen, not only did I order a presentence investigation, but it was submitted to me fairly quickly after the adjudication of guilt. I waited for the sentencing until June 12th, but for reasons beyond anybody's control, it was not  well, I guess it was not, but for good reason, it was postponed until today. One of the reasons I took so long, really, to actually decide the sentence today  one reason I waited was, I thought maybe there would be some difference of opinion, or something like that, about Mr. Costello.
"I have letters about Mr. Costello. I reviewed all the evidence considerably. I have read the psychiatric reports and the psychologist's report. I find the only thing going in Mr. Costello's favor is his youth. Age alone is not enough. Captain McCrary was shot five times. The record shows, also, it was premeditated. The defendant's statement also shows it was premeditated. He said that he had planned to do that. Murder of anyone is an unforgivable offense. There is no way  no way at all to go back and bring that loss of life back  just no way. All of the Ten Commandments, one of which is, `Thou shalt not kill,' those words used at that time  Thou shalt not kill  those are good today."
The record clearly shows that the plea of guilty was made by "one competent to know the consequences" and it does not appear that the plea was induced by "fear, misapprehension, persuasion, promises, inadvertence, or ignorance." See Pope v. State, 56 Fla. 81, 47 So. 487, 488 (1908), cited in the majority opinion.
Human nature being as it is, every plea of guilty is made with the hope of leniency, but this hope of a lighter sentence does not taint the guilty plea so as to nullify it. The defendant does not claim misrepresentation, nor does he say that his counsel assured him a life sentence would be imposed if the plea was entered. At most, defendant says that he entered the plea upon recommendation of his attorneys because, in their opinion, he would not receive the death sentence. If this is sufficient ground to withdraw a plea of guilty, then no case could be terminated by such a plea.
From the record it appears that the murder was a brutal one. Colored photographs of the deceased showing the bullet wounds would have been admissible in a jury trial. The defendant had confessed. The attorneys for defendant were primarily concerned with securing a recommendation of mercy and avoiding the death penalty, but they were faced with a dilemma. We should ask, "What would you have done  take a chance with the jury or take a chance with the judge?" The attorneys had opinions concerning the personal beliefs of the trial judge on capital punishment and explained these to the defendant. Of course, the feeling of any juror toward capital punishment at this point in the case could not be determined. After this explanation, the defendant freely and voluntarily made the choice. There is nothing in the record to indicate that the attorneys forced the defendant to make this decision. Any recommendation which they made was a trial attorney's best judgment under the circumstances. Even though the results were unfortunate, this judgment was in accordance with the high standards of attorneys in the practice of law.
*206 In my opinion the trial judge did not commit error in accepting the guilty plea. To hold otherwise opens the door for every self-confessed murderer to take his chances with the judge and, if the sentence is death, to withdraw his plea on the ground that his hope of lenience was not fulfilled.
The belief of defendant that he would receive a lighter sentence than if convicted by a jury does not constitute a valid ground for withdrawal of the plea of guilty. Collins v. State, 83 So.2d 6 (Fla. 1955).
NOTES
[1] The questioning included the following colloquy:

"Q [by the trial judge]: Mr. Costello, I want you to think about this. Are you entering a plea of guilty to murder in the first degree because you are guilty, and for no other reason?
"A [by Costello]: Yes, sir.
"Q Mr. Costello, has any person, anybody at all, promised or suggested to you that you would be rewarded in any manner, or that you will be given life sentence if you plead guilty to first degree murder?
"A I haven't been promised anything. No, sir.
"Q I don't doubt your word for a moment, Mr. Costello, but when you say you have not been promised anything, would you expand on that?
"A Well, I asked their legal opinion. They felt that it would be better for me to take my chances, and before a jury might be less, if I went for a trial by jury.
"Q I see. It was not in the nature of a promise or anything like that?
"A No.
"Q Are you pleading guilty because you hope that your chances will be better before the court than before a jury?
"A Yes.
"Q Has anybody used any threats, force, pressure or any intimidation, or any kind of pressure to cause you to plead guilty?
"A No sir."
[2] Costello submitted an Affidavit to this Court in which he stated:

"... I feel I did not receive a fair and impartial hearing and was deprived of due process of law in that it was my opinion, after discussion with my counsel, that if I pled guilty I would escape the sentence of death and this opinion was made stronger by indications from my counsel that the State Attorney would not recommend the death penalty and statements from my attorney, Jere Tolton, that he was quite confident after talking with the judge that I would not receive the death sentence. After conversations with my attorneys the night before the trial, I felt completely assured that if I pled guilty, I would receive a life sentence and my parents concurred in this belief with me and they recommended that I listen to the advice of my attorneys and do as they recommended."
[3] In his affidavit, the attorney swore:

"... that due to certain expressions of opinion made by the Court regarding its attitude on capital punishment, to-wit: `I do not believe in capital punishment and I do not see how I could give the death penalty, especially if the State Attorney did not recommend it.' or similar words, which, although were in no way intended by the Court or accepted by the undersigned as constituting a promise or guarantee. nevertheless, in the opinion of the undersigned, together with the State Attorney's statement that his office would not recommend the death penalty, the strong effect it had on the undersigned in consulting with the Defendant and the Defendant's inability to reason properly due to mental defects, collectively resulted in the Defendant failing to get a fair and impartial trial and deprived him of due process of law, all of which are guaranteed by the Constitutions of the United States and the State of Florida."