474 So.2d 1178 (1985)
Barry HOFFMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 63295.
Supreme Court of Florida.
August 22, 1985.
*1179 John B. Monroe, Jacksonville, for appellant.
Jim Smith, Atty. Gen., Raymond L. Marky and Andrea Smith Hillyer, Asst. Attys. Gen., Tallahassee, for appellee.
BOYD, Chief Justice.
This case is an appeal from a judgment of conviction of crimes including first-degree murder. The trial court imposed a sentence of death for the capital offense. *1180 We have jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const.; § 921.141, Fla. Stat. (1979).
Appellant was charged with two counts of first-degree murder and one count of conspiracy to murder. The testimony presented at the trial established the following facts. On September 7, 1980, the bodies of Frank Ihlenfeld and Linda Sue Parrish were found in a motel room in Jacksonville Beach. Both had died by stabbing, having received numerous stabbing and slashing wounds.
State's witness George Marshall testified that he had recruited appellant Barry Hoffman and his co-defendant James White to perform collections work for a Leonard Mazzara. Ultimately Hoffman and White were assigned by Mazzara to kill Ihlenfeld. Marshall testified that on September 7, 1980, he and Mazzara accompanied Hoffman to the airport and that during the trip to the airport Hoffman said he had carried out the assignment by killing Ihlenfeld by stabbing and cutting his throat.
Three special agents of the FBI testified as to their participation in the arrest of appellant on October 21, 1981 in Jackson, Michigan. Appellant was taken to a state police station there and interrogated. According to the testimony, appellant was advised of his fifth and sixth amendment rights and signed an acknowledgment of that fact. The acknowledgment was admitted into evidence. The FBI agents who interviewed appellant testified that he admitted to committing the murders.
A detective of the Jacksonville Beach Police testified that he went to Michigan to interview Hoffman. The officer testified that appellant was advised of his rights, that he acknowledged his understanding thereof in writing, and that he confessed to receiving $5,000 in payment for his service in carrying out the killings.
There was testimony that a cigarette package was found at the scene of the murders. There was expert testimony that a fingerprint found on the package matched a known print made with the left thumb of appellant Hoffman.
Appellant testified in his defense. He denied committing the murders. He presented the testimony of his girlfriend to the effect that he was at her home on the day the murders occurred and was there when she left to go out that morning. Hoffman himself testified that he departed the area by airplane early in the afternoon of that day. In rebuttal, the state presented the testimony of a detective concerning a prior statement of appellant's girlfriend. The testimony was that in that statement the girlfriend told the officer that Hoffman and White spent the night prior to the murders at her home but left together in the morning.
The jury returned verdicts finding appellant guilty of first-degree murder for the death of Ihlenfeld, second-degree murder for that of Parrish, and conspiracy to commit murder in the first-degree.
At the sentencing phase, the state presented no additional evidence. The state and defense stipulated that the statutory mitigating factor of lack of a significant history of criminal activity existed. § 921.141(6)(a), Fla. Stat. (1979). They stipulated further to the fact that both Mazzara and White had received consecutive life sentences on their convictions for the murders. Hoffman testified at the sentencing phase, denying his guilt of the crimes. The jury recommended a sentence of death.
Hoffman's first point on appeal is that the trial court erred in denying his motion to suppress his confessions. He argues that his statements were not freely and voluntarily made since they were given after he had requested permission to make some telephone calls to seek assistance in obtaining a lawyer. The state notes that Hoffman's motion to suppress did not state this particular ground. The state also responds that even if Hoffman had made a request for an attorney, he knowingly and intelligently waived his right to have an attorney present by executing a written waiver before confessing. We find that, whatever intention Hoffman may have had *1181 about exerting his right to remain silent, his rights were knowingly and intelligently waived when he executed the written waiver and that his confessions were therefore properly admitted. Cannady v. State, 427 So.2d 723 (Fla. 1983); Witt v. State, 342 So.2d 497 (Fla. 1977), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977).
Hoffman next argues that the trial judge erred by failing to specifically find on the record that the confessions were voluntarily made and that the record does not satisfy the "unmistakable clarity" test mandated by Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967) and McDole v. State, 283 So.2d 553 (Fla. 1973). We have held that a trial judge need not recite a finding of voluntariness if his having made such a finding is apparent from the record. Peterson v. State, 382 So.2d 701 (Fla. 1980). In this case evidence was presented to show that the confessions were voluntarily given and the issue was argued by the parties. The judge ruled the testimony about the confessions admissible. We therefore find that the record shows with sufficient clarity that the trial judge made a finding that the confessions were voluntary.
Hoffman's next argument on appeal is that the trial judge erred in excusing for cause certain veniremen because of their views on capital punishment. He contends that the veniremen's ambiguous responses did not affirmatively show that they were irrevocably committed to voting against the death penalty. See Granviel v. Estelle, 655 F.2d 673 (5th Cir.1981), cert. denied, 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982).
The state points out that the argument raised on appeal is different from the argument raised as an objection during jury selection. At voir dire, defense counsel objected to the excusal of certain veniremen on the ground that even though they said they could never vote to recommend death, they did say they could reach a guilty verdict. We specifically rejected this argument that a prospective juror can only be excused upon a showing that he or she was unable to return a verdict of guilty in Downs v. State, 386 So.2d 788 (Fla), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980). With respect to the argument mentioned on appeal that the veniremen gave ambiguous responses, this issue was not properly preserved for appeal since it was not announced as a basis for objection. Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981); Castor v. State, 365 So.2d 701 (Fla. 1978). We therefore conclude that the latter argument was not properly preserved for appeal. Moreover, a recent decision of the United States Supreme Court indicates that appellant's argument based on ambiguous responses is without merit. Wainwright v. Witt, ___ U.S. ___, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).
Finally, Hoffman claims that the sentence of death is improper. He first argues that the prosecuting attorney made improper arguments to the jury. Again this issue was not properly preserved for appeal as no objections were made. Maggard v. State; Darden v. State, 329 So.2d 287 (Fla. 1976), cert. dismissed, 430 U.S. 704, 97 S.Ct. 1671, 51 L.Ed.2d 751 (1977).
Next appellant claims that the trial court erred in finding the existence of several aggravating circumstances. The judge found as aggravating circumstances that appellant had previously been convicted of a violent felony, section 921.141(5)(h); and that it was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification, section 921.141(5)(i). He concluded that these aggravating circumstances were not outweighed by the mitigating circumstances of Hoffman's lack of significant criminal activity and of his co-conspirators' receiving life sentences.
The judge's finding that Hoffman had previously been convicted of a violent felony was based upon Hoffman's conviction for the second-degree murder of Ms. Parrish. Hoffman argues this finding is in error because the evidence showed that *1182 James White, and not he, committed the murder of Ms. Parrish. This argument ignores the fact that as Mr. White's accomplice, Hoffman was a principal to the murder of Ms. Parrish. His conviction for second-degree murder, standing alone, is sufficient to show the existence of this aggravating circumstance.
Hoffman next complains that the trial court erred in considering the manner of Ms. Parrish's death in making his findings. The judge did not consider the manner of Ms. Parrish's death as a separate aggravating circumstance, but rather considered it in support of his finding that Hoffman had previously been convicted of a violent felony. Although this evidence was not necessary to support the judge's finding, since a conviction for second-degree murder inherently involves violence to another person, we find no error in the judge having considered it.
Hoffman also argues that the trial court erred in finding that the murder was especially heinous, atrocious or cruel even though the jury itself was not instructed on this particular aggravating circumstance. We fail to see how the jury's not being instructed on this aggravating circumstance has worked to appellant's disadvantage and therefore find this argument to be without merit.
Hoffman's next argument is that the state improperly sought the death penalty to punish him for not giving testimony against a co-defendant. In support of this contention appellant shows us that before trial, in exchange for a promise of a recommendation of life sentences, he agreed to plead guilty to the two first-degree murder charges and testify against Mazzara. When appellant later reneged on the agreement to testify, the state withdrew from the bargain and proceeded to prosecute him on the charges. Appellant's argument is without merit.
Hoffman had the choice of abiding by the plea agreement or not. When he refused to go along, the agreement became null and void as if it had never existed. A defendant cannot be allowed to arrange a plea bargain, back out of his part of the bargain, and yet insist the prosecutor uphold his end of the agreement. Ehl v. Estelle, 656 F.2d 166 (11th Cir.1981), cert. denied, 455 U.S. 953, 102 S.Ct. 1459, 71 L.Ed.2d 669 (1982).
Finally, appellant argues that the sentence of death here violates his right to equal protection of the law in view of the fact that Mazzara, who procured the murders, and White, who was appellant's accomplice in carrying them out, each received consecutive sentences of life imprisonment for their roles in the crimes. State's witness Marshall received immunity from prosecution. Appellant relies on Slater v. State, 316 So.2d 539 (Fla. 1975). But this case is not like Slater. The decisions of this Court make clear that it is permissible to impose different sentences on capital codefendants whose various degrees of participation and culpability are different from one another. E.g., Salvatore v. State, 366 So.2d 745 (Fla. 1979). Moreover, the exercise of prosecutorial discretion in granting immunity to a less culpable accomplice, co-conspirator, or aider and abettor does not render invalid the imposition of an otherwise appropriate death sentence. Palmes v. Wainwright, 460 So.2d 362 (Fla. 1984); Downs v. State.
Having considered each of the issues on appeal and finding no error, we affirm the judgments of conviction and the sentence of death.
It is so ordered.
ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.