585 So.2d 350 (1991)
Clifton Reader BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3326.
District Court of Appeal of Florida, Fourth District.
August 7, 1991.
Richard L. Jorandby, Public Defender, and Paul E. Petillo, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sylvia H. Alonso, Asst. Atty. Gen., West Palm Beach, for appellee.
HERSEY, Judge.
Appellant, Clifton Reader Brown, appeals his conviction and sentences for robbery with a deadly weapon, attempted murder in the second degree and grand theft entered after an open plea of guilty. The dispositive issue on appeal is whether the guilty plea was supported by an adequate inquiry. We find it was not and reverse.
Subsequent to the selection of but prior to the swearing in of a jury, the trial court held a hearing on appellant's pretrial motions. After the court denied these motions, appellant requested the court to entertain an open plea. After having an informal plea colloquy with his attorney and a formal one with the trial judge, appellant changed his plea and entered pleas of guilty to all three counts. The trial court found these guilty pleas to be freely and voluntarily entered, deferred sentence and adjudication to November 20, 1990, and ordered a presentence investigation.
Prior to the date set for sentencing, appellant filed a pro se motion to withdraw his pleas of guilty. After inquiring into *351 appellant's reasons, the trial court denied appellant's motion to withdraw.
On November 6, 1990, appellee filed a Notice to Declare Defendant an Habitual Violent Felony Offender. At the sentencing hearing, the trial court found appellant to be an habitual (non-violent) felony offender and sentenced him as follows: (1) robbery with a deadly weapon  life imprisonment, (2) attempted second degree murder  life imprisonment, and (3) grand theft  ten years imprisonment, with all sentences to run concurrently.
Counsel for appellant thereafter moved for reconsideration and/or mitigation of appellant's sentence after learning from the Department of Corrections that a life sentence in non-capital cases such as this is a life sentence without the possibility of release or review by a parole commission (short of executive clemency). At the hearing, appellant's counsel reminded the trial judge that at the time of sentencing the judge had indicated he would not sentence appellant to the maximum provided by law, and argued that in fact appellant had been given the maximum sentence, i.e., a life sentence without the possibility of release or review by a parole board.
Appellee argued that (1) a trial court has no discretion in sentencing habitual felony offenders for first degree felonies [court must sentence to life imprisonment], (2) the trial judge did not impose the maximum sentence provided by law because (a) consecutive life sentences might have a bearing on appellant's eligibility for executive clemency and (b) the trial court could have found appellant to be an habitual violent felony offender; and finally, (3) in order to resentence appellant at this stage the trial court would have to discard its habitual offender determination regarding the robbery with a deadly weapon and attempted second degree murder counts, and sentence appellant according to the guidelines.
The trial court denied appellant's motion to reconsider and/or mitigate his sentence, finding that it had not sentenced appellant to the maximum because: (1) it did not declare appellant to be an habitual violent felony offender; and, (2) it did not sentence appellant to consecutive life terms. This appeal followed.
Initially, appellant argues that during the plea colloquy, the trial court did not determine that appellant understood what the maximum penalties were. Appellant further argues that he was misinformed as to the maximum penalties because the Acknowledgment of Plea and Waiver of Rights Form incorrectly reflects a maximum penalty of thirty years imprisonment and five years imprisonment for the attempted murder and grand theft counts, respectively, instead of correctly reflecting life imprisonment and ten years imprisonment, respectively, under the habitual felony offender statute. [Appellant was given the maximum sentence under the statute on these counts.] Finally, appellant points to the post-sentencing hearing on appellant's motion to reconsider and/or mitigate sentence, which revealed that all parties were ignorant of the fact that a life sentence for a non-capital offense meant life in prison without any possibility of release short of executive clemency.
Appellee, on the other hand, argues that there was no error because the trial court determined that appellant understood the consequences of entering an "open" plea and, given the absence of a plea bargain or assurance of a particular sentence in this case, the trial court continually emphasized that it was not bound to impose a certain sentence. In support of its position, appellee relies on portions of the change of plea hearing together with language from the Acknowledgment of Plea and Waiver of Rights Form to conclude that "the record refutes appellant's claim that he was not aware of the maximum penalty to which he was subjecting himself by pleading `open' to the court." Appellee argues that the focus should be on what transpired at the time appellant entered his plea, not what occurred subsequent thereto after the time appellant was sentenced, and notes that appellant sought to withdraw his plea prior to, rather than subsequent to, the imposition of sentence. Finally, appellee argues that the fact that a life sentence means a life sentence without the possibility of parole *352 is not a direct consequence of appellant's guilty plea, but rather, is a collateral consequence of which the trial court need not advise appellant.
Appellee's argument that the fact that a life sentence under the habitual offender statute means a life sentence without the possibility of parole is not a direct consequence, but rather a collateral consequence, of appellant's guilty plea is without merit. In Zambuto v. State, 413 So.2d 461 (Fla. 4th DCA 1982), this court stated that whether a consequence of a plea is direct or collateral "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. at 462 (citations omitted). As appellant indicates, the fact that he was sentenced to life in prison without possibility of parole and hence will not be released from prison obviously has a definite, immediate and automatic effect on the range of his punishment and is therefore a direct consequence of the plea.
Regardless of the parties' characterization of the trial court's actions in accepting appellant's plea, the essential issue is whether the trial court erred in accepting appellant's plea. Thus, the critical question is whether the trial court carried out its responsibility as mandated by rule 3.172(c)(i), Florida Rules of Criminal Procedure, in accepting appellant's guilty pleas. This rule states:
(c) [T]he trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he understands the following:
(i) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(Emphasis added.)
Appellee relies on the fact that the record "is replete with appellant's assurance that he understood the consequences of entering an `open' plea," (not made pursuant to any plea bargain or assurance of sentence), that the trial court continually emphasized that it was not bound to impose a certain sentence, and finally, that appellant was advised that the trial court could choose either to sentence appellant under the sentencing guidelines to a maximum of twenty-two years incarceration, or to sentence appellant as a habitual offender or habitual violent offender outside of the sentencing guidelines. Appellee also points to language in the Acknowledgment of Plea Form signed by appellant that states, "I understand that if the court accepts my plea to these charges, my sentence will be an open plea to the court."
Appellee relies on Homer v. State, 553 So.2d 781 (Fla. 4th DCA 1989); State v. Smith, 507 So.2d 1209 (Fla. 4th DCA 1987); and State v. Wilson, 395 So.2d 520 (Fla. 1981).
In Homer, this court held that a defendant was not entitled to withdraw his open plea of guilty because the plea was not negotiated based on any promises, nor was the defendant assured of any particular sentence.
In Smith, this court held, after determining that the trial court erred in departing below the recommended guidelines sentence, that the defendant was not entitled to withdraw his plea where the defendant pleaded "open" and there was no plea bargain, thus no reason, to permit withdrawal of the plea.
In Wilson, the supreme court held that rule 3.172(c)(i), Florida Rules of Criminal Procedure, requiring the trial court to advise a defendant of the mandatory minimum sentence for a crime to which he had pled guilty, was satisfied where the prosecutor advised the court during the sentencing proceeding, with the defendant present, of the mandatory minimum sentence. The court stated:
[t]he requirement of Rule 3.172(c)(i) is met when the record conclusively demonstrates that the defendant was apprised of the mandatory minimum penalty provided by law.
Wilson, 395 So.2d at 521.
Appellant relies on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Williams v. State, 316 So.2d 267 *353 (Fla. 1975); Thompson v. State, 351 So.2d 701 (Fla. 1977), cert. denied, 435 U.S. 998, 98 S.Ct. 1653, 56 L.Ed.2d 88 (1978); Costello v. State, 260 So.2d 198 (Fla. 1972); and Smith v. State, 545 So.2d 423 (Fla. 4th DCA 1989).
Boykin, established that a trial court must determine, before accepting a guilty plea, that it is being entered voluntarily and that the defendant understands the consequences of entering such a plea.
In Williams, the supreme court, in complying with the constitutional mandate of Boykin under rule 3.170, set out the essential requirements for taking a guilty plea: (1) the plea must be voluntary; (2) the defendant must understand the nature of the charge and the consequences of his plea; and (3) there must be a factual basis for the plea. Regarding the second requirement, which is pertinent to this case, the court stated:
The purpose of this requirement is to ensure that [the defendant] knows what particular act he has committed, what law he has violated, and what maximum penalty may be imposed for the offense with which he is charged. He must also know that entry of a guilty plea constitutes a waiver of certain constitutional rights, specifically his right to remain silent, have a jury trial, have process to obtain witnesses on his behalf, and confront witnesses who are his accusers. If he has raised defenses in the proceeding, such as a motion to suppress evidence, he should understand that he has waived these defenses by pleading guilty.
Williams, 316 So.2d at 271 (emphasis added) (citations omitted).
In Thompson, the supreme court, relying on Costello, allowed the defendant to withdraw his guilty pleas after finding that the defendant had established that he was prejudiced in a way that contaminated the voluntariness of his pleas. There the defendant showed that the pleas were entered as the result of a failure of communication or honest misunderstanding as to the commitment supposedly made by the trial judge which was communicated to the defendant by his court-appointed counsel. Thompson, 351 So.2d at 701.
In Costello, the supreme court found that the defendant had not freely entered a guilty plea where the defendant demonstrated, by the affidavit of his court-appointed attorney, that his attorney had apparently led him to believe that the trial judge would not impose a death sentence if he pleaded guilty.
In Smith, this court held that the defendant could withdraw his guilty plea since he had not been informed of the correct sentence and the trial court had imposed an unauthorized sentence. This court stated:
Whether or not appellant mistakenly believed that his sentence would be for twenty-five years, of which he would only serve a portion, or for a twenty-five year mandatory minimum, the record does not indicate that he was ever informed either by his lawyer or the court that the sentence was a life sentence with a twenty-five year mandatory minimum, which is the only authorized sentence for a capital felony when the death sentence is not imposed. Conceivably, under a life sentence appellant could serve longer than the twenty-five-year minimum.
Smith, 545 So.2d at 423 (emphasis added) (citation omitted).
Furthermore, although not cited by the parties, this court in Huot v. State, 516 So.2d 1140 (Fla. 4th DCA 1987), allowed the defendant to withdraw his guilty plea and held, based on the mandate in rule 3.172(c)(i), Florida Rules of Criminal Procedure, that:
Failure to advise a defendant of a maximum possible sentence prevents the defendant from being properly apprised of the significance of his plea and is therefore error for which the defendant must be afforded the opportunity to withdraw a plea of guilty. See Green v. State, 406 So.2d 1148 (Fla. 1st DCA 1981), approved, 421 So.2d 508 (Fla. 1982).
Id. at 1141. In Huot there was no plea bargain and the defendant had not been advised of the possible penalties.
*354 In Green v. State, 406 So.2d 1148 (Fla. 1st DCA 1981), approved, 421 So.2d 508 (Fla. 1982), referred to by this court in Huot, the first district reasoned that since the Florida courts routinely had held that the failure to advise a defendant of a mandatory minimum sentence, pursuant to rule 3.172(c)(i), prevents a defendant from being properly apprised of the true significance and consequences of his or her guilty plea and constitutes error, it logically followed that it was also error to fail to advise a defendant of a maximum possible sentence.
The record in this case clearly reflects that appellant requested the trial court to entertain an open plea and that before accepting appellant's guilty plea the trial court fully explained to appellant the meaning and consequences of entering an open plea. Further, as appellee notes, there was neither a plea bargain nor was appellant assured any particular sentence.
Notwithstanding, this record contains no evidence that the defendant was advised, either by his attorney or by the trial court, of the maximum possible sentence as required by rule 3.172(c)(i). The transcript from the change of plea hearing contains no such evidence and the maximum penalties listed on the Acknowledgment of Plea and Waiver of Rights Form for the attempted murder and grand theft counts were incorrect. Although, as appellee points out, appellant was advised that the court could choose either to sentence appellant under the sentencing guidelines to a maximum of twenty-two years incarceration, or to sentence appellant as a habitual offender or habitual violent offender outside of the sentencing guidelines, the record reflects that appellant was never informed of the significance and true consequence of his guilty pleas, i.e., the fact that the maximum penalty to which he was subjecting himself by pleading guilty was life imprisonment without the possibility of parole.
Further, although the Acknowledgment of Plea and Waiver of Rights Form correctly lists the maximum penalty for the robbery with a deadly weapon count as "up to life imprisonment," the record nevertheless does not reflect that appellant was informed of the correct sentence since it does not indicate that he was ever apprised that the sentence was a life sentence without the possibility of parole. As demonstrated at the post-sentencing hearing on appellant's motion, all the parties were apparently unaware at the time appellant changed his plea from not guilty to guilty that a life sentence under the habitual offender statute meant life imprisonment without the possibility of parole or early release, as opposed to, for example, life imprisonment with a mandatory minimum of a term of years. Thus, this court finds that the trial court reversibly erred in accepting appellant's guilty pleas without determining that appellant was apprised of the maximum possible penalties. We remand to permit the appellant to withdraw his guilty pleas on all counts.
REVERSED AND REMANDED.
STONE and GARRETT, JJ., concur.